UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
WESTCHESTER TEAMSTERS LOCAL 456 :
ANNUITY FUND, : **ORDER DISCHARGING**
WESTCHESTER TEAMSTERS LOCAL 456 : **THE ATTACHMENT AND**
PENSION FUND, : **REGULATING CLAIMS**
WESTCHESTER TEAMSTERS LOCAL 456 : **AGAINST ATTACHED**
HEALTH & WELFARE FUND, : **FUNDS AND FEES**
WESTCHESTER TEAMSTERS LOCAL 456 :
UNEMPLOYMENT FUND, : 02 Civ. 6664 (AKH)
SAUL L. SINGER, Trustee, and :
ROSS PEPE, Trustee :
　:
　　　　　　　　　　　Plaintiffs, :
　:
　　　-against- :
　:
FLEET NATIONAL BANK, :
UNITY MANAGEMENT, INC., :
KENNETH DECTER, and :
H. PHILIPP HUFNAGEL, :
　:
　　　　　　　　　　　Defendants. :
------------------------------------------------------------------ x
ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

　　　　Following judgment, filed August 28, 2006 in the aggregate amount of $4,333,740, in favor of the four funds of Plaintiff, Westchester Teamsters Local 456 Annuity, Pension, Health & Welfare, and Unemployment Funds, and jointly and severally against the four defendants, Fleet National Bank, Unity Management, Inc., Kenneth Decter and H. Philipp Hufnagel, three issues remain for my consideration:  (1) a motion by the escrow agent, Sexter & Warmflash, former counsel to Defendant  Kenneth Decter, to discharge the attachment and escrow of $196,802.30; (2) a motion for attorneys' fees and expenses by Plaintiff, Westchester Teamsters, the prevailing party in this ERISA lawsuit, and (3) a motion to release and discharge the bond posted by Fleet National Bank. I will address these issues, in turn, below.

1

**Discharging the Attachment and Regulating the Claims Against the Attached Funds**

The attachment was ordered by the New York Supreme Court, New York County, effective July 23, 2002, and filed, with the requisite bond in the County Clerk's Office for the County of New York on July 29, 2002. (Affirm. Richard F. Lawler, Ex. 2, ¶ 3; Decl. Jeremy A. Welfer, Sep. 28, 2006, Ex. B). Decter deposited the funds covered by the attachment, reflecting his beneficial ownership in a sale of commercial real estate at 388-390 Old Country Road, Garden City, New York, owned in the name of a corporation half-owned by Decter. The sale of that property resulted in net proceeds of $319,548.42. Of that amount, $122,556.13 was paid to the United States Internal Revenue Service to satisfy unpaid tax liabilities of Decter, and the balance, $196,992.29, remained subject to the attachment. By agreement among the potentially interested parties, the attached funds were kept, subject to the attachment, in an escrow kept by Decter's lawyers, Sexter & Warmflash. After the case was removed from the New York Supreme Court to this Court, an Order of Attachment of this Court, filed October 15, 2002, replaced the state court attachment.

The escrowed funds are now sought by Kenneth Decter's former wife, Ellyn Sosin, and the Plaintiff, Westchester Teamsters Local 456 Annuity and Pension Funds. The New York State Department of Taxation and Finance, although it has not intervened in the lawsuit, filed a claim with the Escrow Agent, Sexter & Warmflash, Decter's former counsel, for Decter's unpaid income taxes in the amount of $39,711.46, and Decter argues that the state tax claim should have priority. Lastly, Sexter & Warmflash seeks its attorneys' fees for preparing and filing the motion to discharge.

Sosin, supported by Decter, makes claim to half the attached amount. She bases her claim on an agreement that she reached with Decter, executed July 25, 2002. The agreement was incorporated, but not merged, into their divorce decree entered in the New York Supreme

2

Court, Nassau County September 20, 2002. (Decl. Ellyn Sosin, Oct. 16, 2006, ¶ 6, Exs. A, B). Pursuant to the agreement, Decter agreed to give his wife one-half of the net proceeds of approximately $300,000 he expected to receive from a sale of the Old Country Road property.

Westchester Teamsters, supported by Fleet Bank as Plaintiff's fiduciary, objects to Sosin's claim, and makes claim to the fund in its entirety, to be applied against the judgment obtained by Plaintiff against Decter, jointly and severally with the other defendants, in the amount of $4,333,740.

Since Decter failed to disclose to Westchester Teamsters or to Fleet Bank his obligation to Sosin, and since the attachment became fixed before any legal property conveyances from Decter to Sosin came to pass, and because Westchester Teamsters was not on notice and did not have knowledge of Sosin's contract expectancy against Decter, the interest of Westchester Teamsters, as the attachment creditor, has priority over Sosin. N.Y. C.P.L.R. § 6203; 6216; cf. Glassman v. Hyder, 23 N.Y. 2d 354, 359 (1968).  Neither Decter's July 25, 2002 settlement with his wife, nor the incorporation (but not merger) of that settlement in the decree of divorce, dated September 20, 2002, effected a transfer of the ownership interest of Decter's corporation in real property.

Sosin appeared at the motion to assert her interest in the proceeds in escrow with Sexter & Warmflash. She failed to show, however, an interest superior to the attachment creditor, nor has she shown that she gave "fair consideration" for that interest, or that she was "without notice" of the attachment. N.Y. C.P.L.R. § 6203.

New York State Department of Taxation made two demands against Sexter & Warmflash, the escrow agent: a claim of October 12, 2005 in the amount of $36,342.28 for Decter's unpaid income tax obligations, and an updated claim, as of June 21, 2006, in the amount of $39,711.46.  New York State did not intervene in this lawsuit and its Tax Compliance Levy

3

demanding the release of funds from Sexter & Warmflash was made years after the attachment in this case was duly filed. Being first in time, the attachment creditor, Westchester Teamsters, has priority. See Cayuga Constr. Corp. v. United States, 1994 WL 392233 at *1 (S.D.N.Y. Jul. 27, 1994) (citing IMFC Prof'l Servs., Inc. v. State, 399 N.Y.S. 2d 804 (4th Dept. 1977)); In re Gruner, 295 N.Y. 510, 520-25 (1946). The claim of Westchester Teamsters is paramount over the claims of both Sosin and the New York State Department of Taxation.

As for the Sexter & Warmflash claim, it has not been quantified, and the basis for it has not been shown. Accordingly, I reject its claim.

Accordingly, for the reasons stated, the entire amount in escrow, $196,992.29, and any interest or accumulations thereon, should be paid to Westchester Teamsters, in partial satisfaction of its judgment claim, and in discharge of the obligations of the escrowee, Sexter & Warmflash.

## Recovery by Plaintiff of its Attorneys' Fees and Expenses

Regarding the issue of attorneys' fees, the court may award such in ERISA actions "in its discretion." 29 U.S.C. § 1132(g)(1). Legal fees are to be awarded according to a number of criteria: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorneys' fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants. Paese v. Hartford L. Acc. Ins. Co., 449 F.3d 435, 450 (2d Cir. 2006) (citations omitted); Rice v. Rochester Laborers' Annuity Fund, 888 F.Supp. 494, 500 (W.D.N.Y. 1995).

Westchester Teamsters asks that defendants reimburse it for its payment of legal fees in the amount of $493,601, and expenses reasonably and necessarily incurred in the amount of $58,723.49—$552,324.49 in all. The legal fees arose from 2,197.85 hours of work, defending

4

against motions to dismiss, to curtail and limit discovery, and for summary judgment. The action was hard-fought, requiring papers, briefs and arguments on many issues of law and fact. The time charges averaged $224.58 per hour. I have reviewed the detailed records of time charged to the case, and find that the services were reasonably performed, at reasonable rates.

Defendant Unity Management objects, citing Rivera v. Benefit Trust Life Ins. Co., 921 F.2d 692, 695, 697 (7th Cir. 1991), and arguing that fees must be proved as an element of damage before judgment, and that Westchester Teamsters's failure to do that constitutes a waiver. I hold, however, that Westchester Teamsters did not waive. In the circumstance of this case, where judgment followed immediately upon a successful motion for summary judgment, there was not a previous opportunity to prove damages. The procedure of a motion, pursuant to Fed. R. Civ. P. 54(d)(2), promptly following entry of judgment, reasonably fits this case and the court's preferences. Westchester Teamsters did not knowingly and deliberately relinquish its right, and thus did not waive. Moreover, Rivera does not support Unity's position in this case, as the Seventh Circuit Court of Appeals upheld the award of attorneys' fees in that case, rejecting the defendants' argument and holding that "a request for attorneys' fees under ERISA may be timely made by post-trial motion." Rivera, 921 F.2d at 697; See also O'Rourke v. Pitney Bowes, Inc., No. 95 CIV. 10288 (DLC), 1997 WL 716117 at *2-3 (S.D.N.Y. Nov. 12, 1997) (reviewing Rule 54(d)(2) claim for fees in ERISA action, "[t]here is no effective or efficient way for parties to litigate the award of attorney's fees until after the Court has ruled on the merits of the underlying claims").

Decter objects that seventy-five per cent of Plaintiff's counsel's work was against Fleet and Unity, and would not have been incurred if Decter alone had been sued. But Decter is without funds, and since he created a fraud that involved Fleet and Unity, he cannot obtain mitigation because it was necessary for Plaintiff to sue those two entities in order to gain a

5

recovery. Decter objects also that a portion of the fees reflected redundant services, services in related litigation, and services in applying for this fee, and that Decter cannot afford to pay the fees incurred by his adverse parties. I find, however, that services were not redundant, that a reasonable amount of collaboration among attorneys within a firm is appropriate, that a reasonable amount of services must be devoted to following related litigation and pursuing activities in such litigation, and that an application for court approval of fees is compensable. See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001) ("Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic."); Klimbach v. Spherion Corp., No. 03-CV-6111, (MT) 2006 WL 3751263, at *6 (W.D.N.Y. Dec. 15, 2006) (fees awarded where counsel investigated basic ERISA law); Aiello v. Town of Brookhaven, No. 94-CV-2622 (FB), 2005 WL 1397202 at *4 (E.D.N.Y. June 13, 2005) (upholding award for overlapping work in complex case). As for Decter's capability to pay fees, that is one factor, among many, that goes into fixing a reasonable fee. Decter was the most culpable party, and his plea of poverty flows directly from the consequences of his fraud, including the civil and criminal actions that were filed against him. It would be unjust if his professed incapacity to make good for the damage he caused could now enable him to evade the responsibility he should have for his conduct.

    Although I find the objections not to be meritorious, I hold, nevertheless, that Westchester Teamsters is not entitled to recover a large portion of its fees from Fleet Bank and Unity. Plaintiff's trustees were neglectful in minding the fiduciary funds that were entrusted to their care. Although, as I have held, Fleet Bank and Unity Management breached their contracts to Westchester Teamsters and are responsible to Plaintiff, jointly and severally with the other defendants, the inattention of Plaintiff's trustees created the settings for those breaches. That inattention should be recognized in regulating Plaintiff's right to recover its legal fees against

Fleet Bank and Unity. I find that a recovery of sixty per cent of fees and expenses, or $331,394.69, would be fair and equitable as against Fleet Bank and Unity Management. Westchester Teamsters should be entitled to recover all of their fees and expenses against defendants Decter and Hufnagel, for their moral and legal culpability merits no adjustment. Interest shall run from the day the supplementary judgment, discussed below, is filed and becomes final.

## Discharge of Attachment Bond filed by Fleet Bank

The bond filed by Fleet National Bank to secure Decter against damages should he prevail is no longer needed. The bond should be released and discharged.

## Conclusion

Plaintiff, Westchester Teamsters, shall propose a judgment, supplementary to the judgment filed August 28, 2006, five days from today by serving the same electronically on the other parties. Five days thereafter, Defendants shall advise Plaintiff of objections. Plaintiff shall then submit, within two additional days, alternative proposals suitably bracketed, and the supporting and opposing reasons for the alternative proposals, both in a set of single documents.

SO ORDERED.

Dated:   February 20, 2007
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

7